

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-2008

# Mitchell v. Grace

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2081

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Mitchell v. Grace" (2008). *2008 Decisions.* Paper 766.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/766

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2081
_____

RICHARD LEE MITCHELL,

Appellant

v.

JAMES GRACE, SUPERINTENDENT, SCI HUNTINGTON;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-3717)
District Judge: Honorable John P. Fullam

_____

Submitted Under Third Circuit LAR 34.1(a)
October 25, 2007

Before: SLOVITER, CHAGARES, and HARDIMAN, *Circuit Judges*.

(Filed: July 31, 2008)

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

Richard Lee Mitchell appeals the denial of his petition for writ of *habeas corpus* (Petition). In our examination of the merits of this matter, we believe that it is unnecessary to reach the issue of procedural bar in light of our decision on the underlying ineffective assistance of counsel claim.

## I.

Because we write for the parties, we will recount only those facts essential to our decision.

In late 2000, Mitchell, Steven McCrea, and McCrea's aunt were awaiting takeout service at a Philadelphia restaurant when Kendrick Haskell and John Ford arrived by car. As Haskell was exiting the restaurant, McCrea confronted him, claiming that Haskell had bumped into McCrea's aunt on his way in. Words were exchanged, and a fistfight ensued between McCrea and Haskell. During the fight, McCrea took a step back and asked for a gun, whereupon Mitchell supplied a loaded .32 caliber revolver. McCrea shot Haskell five times, killing him. McCrea then challenged Ford, who had exited the vehicle to witness the fight, and pointed the gun at him. When Ford turned to run away, McCrea shot him in the head with the last bullet in the cylinder. Ford died instantly.

## II.

At Mitchell's trial, the prosecutor sought to introduce the preliminary hearing testimony of Braheem Jackson, an eyewitness who said he saw Mitchell hand McCrea the gun. Because Jackson was unavailable to testify, the prosecutor offered to stipulate that

Jackson had one juvenile *crimen falsi* conviction. Mitchell's trial counsel, Tariq El-Shabazz, objected claiming that the prosecutor failed to turn over Jackson's juvenile record to Michael Wallace, Esq., who represented Mitchell at the preliminary hearing.

To resolve the dispute, the trial court held a suppression hearing at which Assistant District Attorney Anne Marie Coyle testified that she *had* given Wallace a copy of Jackson's criminal record at the preliminary hearing. El-Shabazz cross-examined Coyle but did not introduce any evidence. After finding Coyle credible, the court admitted Jackson's testimony over El-Shabazz's objection, and the trial commenced.

The jury found Mitchell guilty of conspiracy to commit murder and he was sentenced to 8 to 40 years in prison. On direct appeal, El-Shabazz argued that the trial court erred by admitting Jackson's preliminary hearing testimony. The Superior Court affirmed the judgment, and the Pennsylvania Supreme Court denied *allocatur*.

Mitchell then sought collateral relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 *et seq.* with the help of new counsel. In the PCRA proceeding, Mitchell alleged that El-Shabazz rendered ineffective assistance by failing to call Wallace to contradict Coyle's testimony. The PCRA court determined that this claim had been "previously litigated" on direct appeal, and declined to hear it under 42 Pa. C.S.A. § 9543(a)(3). Once again, the Superior Court affirmed and the Pennsylvania Supreme Court denied *allocatur*.

In his Petition, Mitchell asserted three claims, only one of which is pertinent to this appeal: *viz.,* whether El-Shabazz rendered ineffective assistance at trial under *Strickland v. Washington,* 466 U.S. 668 (1984).

**III.**

Mitchell insists that El-Shabazz rendered ineffective assistance at the suppression hearing when he failed to call Wallace to rebut Coyle's claim that she gave Wallace a copy of Jackson's juvenile record at the preliminary hearing.

"Under the first prong of *Strickland,* a petitioner must show that trial counsel's performance was deficient." *Outten v. Kearney,* 464 F.3d 401, 414 (3d Cir. 2006) (citation omitted). "The proper standard for attorney performance is that of 'reasonably effective assistance,' as defined by prevailing professional norms." *Id.* (alterations and citation omitted). Thus, Mitchell "must establish that counsel's representation fell below an objective standard of reasonableness," which we assess "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* (citation omitted). This inquiry requires courts to "be highly deferential to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight." *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir. 2002) (citation and internal quotation marks omitted).

The Constitution does not require that a criminal defense attorney leave "no witness unpursued." *See Jacobs v. Horn*, 395 F.3d 92, 122 (3d Cir. 2005). As with other decisions by trial counsel, we presume that counsel acted strategically in deciding not to

4

call certain witnesses, and the defendant bears the burden of rebutting that presumption. *See Thomas v. Varner*, 428 F.3d 491, 499-500 (3d Cir. 2005).  In cases where the record does not explicitly disclose trial counsel's actual strategy or lack thereof, a defendant may rebut the presumption only by showing that no sound strategy could have supported the conduct.  *See id.* at 500.  In evaluating a defendant's proof, it is "entirely proper" that we "engage in record-based speculation as to what counsel's strategy might have been."  *See id.* at 500 n.8.  If the record shows that "counsel actually pursued an *informed* strategy (one decided upon after a thorough investigation of the relevant law and facts)," the presumption becomes "virtually unchallengeable."  *Id.* at 500 (citation omitted).

Here, on direct appeal the Superior Court rejected Mitchell's claim that the trial court erred when it denied Mitchell's motion to suppress.  The Superior Court based its affirmance entirely on the trial court's factual finding that Coyle credibly testified that she gave Jackson's juvenile record to Wallace.  In this appeal, Mitchell must show that more zealous efforts by El-Shabazz would have uncovered clear and convincing evidence sufficient to rebut this critical fact.  *See* 28 U.S.C. § 2254(e)(1).  He has failed to meet this burden.

Mitchell faults El-Shabazz for failing to present the live testimony of Wallace himself.  In support of this claim, Mitchell argues that Wallace averred in his affidavit that El-Shabazz "did not even bother to contact" Wallace.  But Wallace's affidavit supports no such conclusion.  In his affidavit, Wallace avers that he was *available* to

testify at the suppression hearing, and outlines what his testimony would have been had he been called to the stand. Absent evidence to the contrary, we assume that El-Shabazz was aware of the substance of what Wallace might testify but made a reasoned decision not to call him anyway. *See Wright,* 473 F.3d at 91 (noting that, where counsel knew a witness was available and was aware of what she could testify but declined to call her, counsel could nevertheless have "a strategic reason" for his decision).

Although Wallace's affidavit shows that he was willing to testify on Mitchell's behalf at the suppression hearing, "the mere fact of people willing to testify on [his] behalf does not demand a finding of ineffectiveness." *Marshall v. Cathel,* 428 F.3d 452, 469 (3d Cir. 2005).

To assess El-Shabazz's effectiveness, we must consider Wallace's affidavit *in toto*, which shows why El-Shabazz reasonably might have declined to present Wallace's testimony at the suppression hearing. Insofar as Wallace merely averred that "had [he] been given a copy of [Jackson's] criminal extract, [he] would have cross-examined him on same," his testimony would have been extremely weak. Taken at face value, Wallace's affidavit is hardly a rebuttal of Coyle's unequivocal testimony that she actually *handed* him a copy of Jackson's record at the preliminary hearing. More importantly, if Wallace's testimony at the suppression hearing tracked his affidavit, a competent attorney could have forced Wallace to either concede that he did not *invariably* cross-examine witnesses on their criminal records even when he had them — especially where their

6

testimony was becoming more favorable to the defense with the passage of time, as was true of Jackson's testimony — or stick to his guns, insist that he impeached witnesses with their records each and every time he had a chance to do so in his more than 35 years of practicing law, and appear incredible in the eyes of the court. Where counsel declines to offer testimony of marginal value which would be especially vulnerable to cross-examination and which would distract the finder of fact from the possible weakness of the state's case, he has not rendered ineffective assistance. *See Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987); *see also McAleese v. Mazurkiewicz,* 1 F.3d 159, 165-68 (3d Cir. 1993). Thus, because El-Shabazz reasonably could have concluded that presenting lukewarm testimony would have been unlikely to succeed, his decision not to call Wallace cannot be considered ineffective. *See Flamer v. Delaware*, 68 F.3d 710, 730 (3d Cir. 1995).

Mitchell insists that no reasonable strategy would support El-Shabazz's decision not to call Wallace to testify, arguing:

> [I]t was incumbent upon trial counsel to call [Wallace] to state unequivocally that the prosecutor did not provide him with Jackson's juvenile record of *crimen falsi*.... [¶] In light of the deference usually given to the Commonwealth in situations where a decision could turn on the strength of the prosecutor's representations, there could be no reasonable basis for trial counsel not to have called [Wallace] to testify that he [had] not received the vital impeachment testimony from the prosecutor. [Wallace's] testimony was necessary for trial counsel to succeed in his attempts to suppress Jackson's testimony. He was ready and willing to attest to this fact at an evidentiary hearing . . . .

7

We are unpersuaded. Upon review of El-Shabazz's argument at the suppression hearing, it is clear from the record that his decision not to call Wallace was the product of a considered strategy in which counsel attempted to keep the burden of proof squarely on the prosecutor. After grilling Coyle under oath about her failure to make any record of having divulged Jackson's juvenile record to Wallace, El-Shabazz argued:

> We cannot presume why Mr. Wallace didn't do anything. The Commonwealth has the burden to produce [*sic*] why it is that they believe that the witness, first of all, should be declared unavailable, and secondly, where they can use this particular testimony. [¶] They didn't call Mr. Wallace here. They asked [*sic*] Mr. Wallace did he have it, didn't he have it, why didn't they in fact cross-examine the witness as to that aspect. None of that was done. [¶] So the argument as to this Court should take the supposition of counsel into consideration as to why it wasn't done, Judge, I believe no. We need evidence.

El-Shabazz synthesized these two strands — the burden of proof and Coyle's failure to document that she provided Jackson's juvenile record to Wallace — into a cogent theory:

> [This] is a case of using the experience argument of counsel, someone with 15 years of experience, someone who's well-versed on the law, someone who knows the importance of a criminal extract, someone who knows the importan[ce] of preserving a record [which] would indicate that the record, that a statement was in fact passed over but not in a criminal extract. [¶] We know the importance of that. And not only indicate that in the record, but there's not even any notation.... [¶] But not that there was a copy of the criminal extract that was run on a particular day and if it's run on that day, there's a computer printout which indicates the date in which that criminal extract, none of that, Judge. [¶] .... [C]ounsel in his argument is shifting the burden because the defense doesn't do this and ... doesn't do that. [¶] Judge, it's his burden. Mr. Wallace wasn't trying to preserve the testimony. Mr. Wallace was cross-examining someone at a preliminary hearing. It was the Commonwealth that was attempting to preserve the testimony.

Thus, as to the question whether Coyle gave this discovery to Wallace, El-Shabazz concluded: "We should have evidence that demonstrates that and we don't have that evidence here."

We also note that at trial El-Shabazz correctly argued that the prosecution had the burden of showing that Jackson was unavailable *and* that Mitchell had an adequate opportunity to cross-examine him. *See McCandless v. Vaughn*, 172 F.3d 255, 265 (3d Cir. 1999) (citations omitted). As we have noted, "[p]erhaps the single most commonly employed defense trial strategy is to eschew any single pre-planned theory and to put the prosecution to its proof and exploit any weakness that became evident as the trial unfolds." *Flamer*, 68 F.3d at 729. The record reflects that El-Shabazz approached the suppression hearing by "put[ting] the prosecution to its proof." That strategy was not unreasonable, and neither was El-Shabazz's decision to forego presenting Wallace's relatively weak testimony.

In the final analysis, it is worth reiterating that "[t]he defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy." *Jacobs*, 395 F.3d at 118 (citation and internal quotation marks omitted). Here, the record reflects that El-Shabazz pursued an informed legal strategy. Although Mitchell complains that El-Shabazz did not *present* Wallace's testimony, there is no evidence to support Mitchell's claim that El-Shabazz was unaware of its content. Where, as is true here, counsel actually pursued an informed strategy, the presumption that El-Shabazz

9

followed a sound strategy becomes "virtually unchallengeable." *Thomas,* 428 F.3d at 500 (citation omitted). The record supports that presumption in this case, and Mitchell has not overcome it. Nor has Mitchell shown that Wallace's lukewarm affidavit, if presented live on the witness stand, would have amounted to clear and convincing evidence sufficient to rebut Coyle's testimony. *See* 28 U.S.C. § 2254(e)(1). Accordingly, we hold that Mitchell has not satisfied the first prong of *Strickland.*[1]

## IV.

In sum, we conclude that Mitchell's Petition was properly denied because his ineffective assistance claim fails on its merits.[2] Accordingly, we will affirm the judgment of the District Court.

---

[1] Even if Mitchell had demonstrated that El-Shabazz rendered ineffective assistance, his *Strickland* claim would fail unless he could prove that counsel's representation prejudiced him at trial. *See Gray*, 878 F.2d at 712; *see also Marshall,* 307 F.3d at 85. We conclude that Mitchell has not demonstrated a reasonable likelihood that the strategy El-Shabazz pursued affected the outcome of the trial.

[2] In his Opening Brief, Mitchell also argues that El-Shabazz rendered ineffective assistance by failing to argue his own ineffectiveness *on appeal*. Unlike the claim that El-Shabazz was ineffective at trial, this claim was not raised in the Petition. Claims not raised in the District Court are waived on appeal. *Hartey v. Vaughn*, 186 F.3d 367, 370 (3d Cir. 1999). Even if it were not waived, however, this claim — which we would analyze under *Strickland*, *see Smith v. Robbins,* 528 U.S. 259, 285 (2000) — would fail based on our conclusion that El-Shabazz did not render ineffective assistance at trial. *See Diggs,* 833 F.2d at 446.

10