

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-4-2005

# Thomas v. Varner

Precedential or Non-Precedential: Precedential

Docket No. 04-2856

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Thomas v. Varner" (2005). *2005 Decisions.* Paper 188.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2856

———

CLAYTON THOMAS

v.

BEN VARNER; THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA,

Appellants

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 02-cv-04778)
District Judge: Honorable Bruce W. Kauffman

———

Argued April 22, 2005
Before: ROTH, FUENTES, and STAPLETON, Circuit Judges.

(Filed: November 4, 2005)

Helen T. Kane (Argued)
Assistant District Attorney
Thomas W. Dolgenos
Chief, Federal Litigation
Ronald Eisenberg
Deputy District Attorney
Arnold H. Gordon
First Assistant District Attorney
Lynne Abraham
District Attorney

1421 Arch St.
Philadelphia, PA 19102-1582

ATTORNEYS FOR APPELLANTS

Daniel Silverman (Argued)
1429 Walnut St.
Suite 1001
Philadelphia, PA 19102

ATTORNEY FOR APPELLEE

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

Following a jury trial, Clayton Thomas was convicted of the shooting death of Harry James, the owner of a speakeasy in Philadelphia. He was also convicted of crimes related to the wounding of Peter Fuller, a patron of the speakeasy. Thomas alleges that his identification by Fuller was tainted by an unconstitutionally suggestive photo array and that his trial counsel was ineffective for failing to move to suppress or otherwise object to Fuller's identification at trial. After finding defense counsel's performance deficient, the District Court issued a writ of habeas corpus directing the Commonwealth to retry or release Thomas. Because we agree with the District Court that counsel's error in failing to move to suppress or object to the identification at trial fatally undermined the reliability of the verdict, we will affirm.

**I.**

The facts underlying this appeal were succinctly summarized by the Pennsylvania Superior Court in rejecting Thomas's appeal in his state post-conviction proceedings:

The charges stemmed from the robbery of a

speakeasy located in the City of Philadelphia. Accompanied by a person who acted as lookout, [Thomas] entered the speakeasy brandishing a firearm and ordered the occupants to the floor. The proprietor of the establishment, Harry James, had been playing chess with a customer, Peter Fuller. Mr. James was fetching a beer for another customer when [Thomas] arrived. Instead of complying with [Thomas's] order, Mr. James leaped at [Thomas] and began to struggle with him. During the course of this altercation, [Thomas] shot Mr. James in the chest. The victim subsequently died of his wound. [Thomas] also shot Mr. Fuller in the shoulder. Mr. Fuller survived.

(App. 684-85.)

After the robbery and shooting, the police talked with at least two eyewitnesses, Christopher Young and Fuller. Young, an acquaintance of Thomas, originally failed to identify Thomas as one of the assailants, but, after making several inconsistent statements about the incident, did identify Thomas. He later testified that he was threatened by the police, and that he feared being arrested if he did not name someone. He also had several criminal charges pending against him when he testified on behalf of the Commonwealth at Thomas's trial.

Fuller, the surviving shooting victim, described his assailant as a black male, and was shown some 750 pictures of black males arrested for robbery, but made no identification at that time.[1] Weeks later, he was shown about 10-12 more photos, but still could not identify anyone. At that time, the detective allegedly pulled two pictures from the group and asked Fuller to take a "real good"

---

[1]There appears to be some confusion in the record as to whether Fuller was shown approximately 750 photographs at that time, or closer to 100 photographs. (App. 573, 489-90).

3

look at them, and Fuller made a tentative identification.[2] At the pretrial hearing and at trial, Fuller testified that he would not have made the identification if the detective had not strongly suggested that the two pictures highlighted were of the perpetrators. Fuller could not make an in-court identification at the pre-trial hearing. Because no identification was made, counsel for Thomas withdrew his pre-trial suppression motion as to identification, as there was no identification to be suppressed. However, at trial, Fuller made a spontaneous in-court identification of Thomas, and counsel failed to object or move to suppress the identification. At trial, the testimony of Young and Fuller's in-court identification were the only evidence connecting Thomas to the crime.

Thomas was convicted by a jury of second-degree murder, robbery, aggravated assault, and possession of an instrument of crime, and was sentenced to imprisonment for life. Thomas's co-defendant, his son Shaurn, was acquitted of all charges against him, which arose from his alleged role as the lookout.

Thomas appealed from his conviction, and the Superior Court affirmed; Thomas did not seek certification with the Pennsylvania Supreme Court. Thomas thereafter filed pro se for state post-conviction relief, and then retained counsel, who filed an amended petition and a supplemental petition. The post-conviction court summarily denied relief on all claims, including his ineffective assistance of counsel claim, without holding an evidentiary hearing. The Superior Court affirmed and the Pennsylvania Supreme Court denied certification.

After exhausting his state remedies to no avail, Thomas filed a petition for habeas corpus in the Eastern District of Pennsylvania, making claims of (1) ineffective assistance of counsel, based on (a) trial counsel's failure to object to an alleged Bruton violation,[3] and

_____

[2]The detective disputed Fuller's account of this incident, stating that Fuller picked out the pictures without his prompting.

[3]In Bruton v. United States, the Supreme Court held "that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in

4

(b) counsel's failure to move to suppress an unreliable witness identification, and (2) prosecutorial misconduct in improperly bolstering the credibility of certain witnesses.[4] The District Court referred the case to a Magistrate Judge, who held an evidentiary hearing. The Magistrate Judge recommended granting the habeas petition solely with respect to the ineffective assistance claim for failure to move to suppress the in-court identification and recommended denying it with respect to all other claims. The Commonwealth filed objections to the recommendation that the petition be granted, while Thomas did not file any objections. The District Court adopted the recommendation with respect to denying the specified claims, and, after conducting a de novo review, agreed that the petition should be granted as to the ineffective assistance claim based on the failure to move to suppress the identification for the reasons presented in its memorandum and order. The Commonwealth appeals.

## II.

The Commonwealth argues that: (1) the Magistrate Judge erred in granting an evidentiary hearing and the District Court erred in relying on evidence from that hearing, as it failed to honor the presumption of correctness accorded to state court findings; (2) the District Court erred in finding that counsel's conduct was objectively unreasonable simply because a better strategy may have existed; (3) the District Court improperly placed the burden of proof on the Commonwealth to show that the evidence should not have been suppressed; and (4) Fuller's identification was cumulative, making its suppression harmless and non-prejudicial.

---

determining petitioner's guilt, admission of [the co-defendant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." 391 U.S. 123, 126 (1968).

[4]Thomas also made an ineffective assistance claim in his petition based on counsel's failure to use an adverse witness' criminal history to impeach him. However, this claim was never pursued in his filings before the District Court, and he does not raise it here.

After setting forth the general habeas corpus standards applicable here, we will consider the arguments in that order.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The District Court decided this case under the unreasonable application provision of the statute's first section. A state court decision is an unreasonable application under § 2254(d)(1) if the court "identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002). "The unreasonable application test is an objective one–a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

"AEDPA's deferential standards of review do not apply 'unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in

light of federal law as established by the Supreme Court of the United States.'" Id. (quoting Everett v. Beard, 290 F.3d 500, 508 (3d Cir. 2002)). In other cases, "federal habeas courts apply pre-AEDPA standards of review." Id. Under those standards, "federal habeas courts conduct[] a de novo review over pure legal questions and mixed questions of law and fact." Id.

## A.      The Presumption of Correctness and the Federal Evidentiary Hearing

According to the habeas corpus statute:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

As noted, the Commonwealth contends that the presumption of correctness from § 2254(e)(1) was ignored by the Magistrate Judge in granting the evidentiary hearing, and that evidence from this hearing should not have been considered by the District Court. Although the Commonwealth rests its arguments entirely on § 2254(e)(1), the propriety of the grant of an evidentiary hearing is the province of § 2254(e)(2). That section proscribes a federal court from holding an evidentiary hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings." § 2254(e)(2).

By its terms § 2254(e)(2) "applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'" Williams v. Taylor, 529 U.S. 420, 430 (2000). Our first inquiry is "whether the factual basis was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer." Id. at 431. The Commonwealth appears to be arguing that the factual basis for Thomas's claim was in fact

7

developed in state court because the subjective intent and motivation of counsel in taking (or not taking) actions during trial, that are later challenged as ineffective assistance, are irrelevant to the Strickland inquiry.[5] However, as we discuss in the next section, the intent or motivation of counsel is relevant to the Strickland inquiry, and therefore the factual basis for the ineffective assistance claim here was not developed in the Pennsylvania proceedings. As we observed in Marshall v. Hendricks, in the course of declining to defer to a state court "strategy" determination similar to the one reached here:

> We conclude that Strickland requires an analysis based on a complete record. The reviewing court's reasoning under the first prong needs to be made with an understanding of counsel's thought process, . . . so that a conclusion whether counsel was ineffective can be made based on facts of record, rather than on assumptions.

307 F.3d 36, 115 (3d Cir. 2002).

The "failure" inquiry does not end once it is determined that the factual basis of a claim had not been developed in state court. Because "[i]n its customary and preferred sense, 'fail' connotes some omission, fault, or negligence on the part of the person who has failed to do something," "a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." Williams, 529 U.S. at 431-32. Accordingly, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432. Here, Thomas requested an evidentiary hearing before the Commonwealth PCR court to develop the record with respect to

---

[5]In other words, the Commonwealth asserts that the case could have been resolved entirely with reference to the state court record, as done by the Commonwealth PCR courts, obviating any need to hold an evidentiary hearing.

8

counsel's choice not to object to or file a motion to suppress the identification. The hearing was denied, and therefore Thomas is not at fault for failing to develop the factual basis for his claim. Section 2254(e)(2) is thus inapplicable. See, e.g., Mason v. Mitchell, 320 F.3d 604, 621 n.6 (6th Cir. 2003). Accordingly, we find no fault in the Magistrate Judge's holding of a hearing.

### B. The Ineffective Assistance Claim

In Strickland v. Washington, the Supreme Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). Accordingly, we must undertake the familiar two-step inquiry by considering (1) whether counsel's performance was so deficient as to constitute a denial of counsel and (2) whether the alleged errors prejudiced Thomas by depriving of a fair trial.

#### 1. *Deficient Performance*

With respect to the deficient performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quotation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[6] Id. at 690.

To overcome the Strickland presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy. It is the former showing that we are presented with here.

Our review reveals a tiered structure with respect to Strickland's strategic presumptions. At first, the presumption is that counsel's conduct might have been part of a sound strategy. The defendant can rebut this "weak" presumption by showing either that the conduct was not, in fact, part of a strategy[7] or by

---

[6]We have previously considered the subjective and objective facets of the Strickland standard. Compare Marshall v. Hendricks, 307 F.3d 36, 105 (3d Cir. 2002) ("[T]he task of the reviewing court is to take each of the claimed failures and measure them against counsel's stated rationale to determine whether the choices were objectively unreasonable."), with Buehl v. Vaughn, 166 F.3d 163, 176 (3d Cir. 1999) (finding that the strategic presumption could not be overcome because "[a]n objection to [the] brief portions of testimony might have simply highlighted the statements for the jury").

[7]We believe that an inquiry into whether counsel actually had some strategy is permissible. Cf. United States v. McCoy, 410 F.3d 124, 135 (3d Cir. 2005) (stating, in a 28 U.S.C. § 2255 case, that "[w]ithout the opportunity to evaluate the rationale given by trial counsel, the issue of possible ineffectiveness cannot be

10

showing that the strategy employed was unsound.  See, e.g., Rice v. Marshall, 816 F.2d 1126, 1132 (6th Cir. 1987).  In cases in which the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy posited by the Commonwealth could have supported the conduct.[8]  See Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (noting that the strategic presumption "has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive'") (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)).  However, if the Commonwealth can show that counsel actually pursued an informed strategy (one decided upon after a thorough investigation of the relevant law and facts), the "weak" presumption becomes a "strong" presumption, which is "virtually unchallengeable."  See Strickland, 466 U.S. at 690; see also Bullock v. Carver, 297 F.3d 1036, 1046-48 (10th Cir. 2002) (discussing the Strickland presumptions).

Here, Thomas rebutted the weak presumption that counsel's actions might have been strategic by offering testimony from counsel that his "actions," in failing to move to suppress or object, were not in fact part of a strategy.  Indeed, counsel testified at the federal evidentiary hearing that he did not see the need to go forward with his already submitted suppression motion once Fuller recanted his identification in the pre-trial hearing and that he believed he was not permitted to object or move to suppress the

_____

conclusively determined.").  Otherwise, incompetency of defense counsel could be rewarded by ingenuity on the part of a State's attorneys in supplying hypothetical strategies to explain defense counsel's uninformed prejudicial oversights.

[8]To be clear, in opposing a petitioner's attempt to disprove the existence of a possible sound strategy, it is entirely proper for the Commonwealth to engage in record-based speculation as to what counsel's strategy might have been.  See Buehl, 166 F.3d at 176.

identification once it had already been made.[9] We note also that the purported strategy–allowing the identification in order to cross-examine Fuller about the improper police efforts in obtaining the identification–does not even appear to be reasonable. Even if the identification was never made or was suppressed, counsel was still free to question Fuller about the police tactics in procuring his since-disavowed identification during the photo array. See Rodriguez v. Young, 906 F.2d 1153, 1160 (7th Cir. 1990) (finding that failure to move to suppress an identification was objectively unreasonable, and noting that the petitioner's "defense could not have been compromised or hurt by a motion to suppress" as "[c]ross examination was still available"). In any case, because Thomas has shown that counsel was not acting pursuant to an informed strategy, the weak presumption that counsel's actions might be part of a strategy was properly rebutted.

Of course, overcoming the strategic presumption does not, in itself, entitle Thomas to relief. It merely gives him the opportunity to show that counsel's conduct fell below objective standards of attorney conduct.[10] "Strickland teaches that a court

---

[9]The Pennsylvania Rules of Criminal Procedure allow for motions to suppress to be made after the commencement of trial if "the opportunity did not previously exist, or the interests of justice otherwise require." Pa. R. Crim. P. 581(B) (formerly Rule 323).

[10]We note that evidentiary hearings regarding counsel's strategy will not be required in all cases, as the objective reasonableness inquiry may obviate the need for such a hearing. Similar to instances in which a court disposes of an ineffective assistance claim by analyzing the prejudice prong without considering whether counsel's performance was deficient, it is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy. See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Put differently, no hearings as to counsel's strategy

12

deciding any ineffectiveness claim must 'determine whether, <u>in light of all the circumstances</u>, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance.'" <u>Jacobs</u>, 395 F.3d at 106 (quoting <u>Strickland</u>, 466 U.S. at 690).

Courts have routinely declared assistance ineffective when "the record reveals that counsel failed to make a crucial objection or to present a strong defense solely because counsel was unfamiliar with clearly settled legal principles." 3 Wayne LaFave et al., Criminal Procedure § 11.10(c), at 721 (2d ed. 1999); <u>see also</u> <u>Cofske v. United States</u>, 290 F.3d 437, 443 (1st Cir. 2002) ("[C]ourts tend to be somewhat less forgiving where counsel altogether overlooks a possible objection or opportunity.") (citing LaFave, <u>supra</u>, § 11.10(c), at 714-15). "[T]he defendant is most likely to establish incompetency where counsel's alleged errors of omission or commission are attributable to a lack of diligence rather than an exercise of judgment." LaFave, <u>supra</u>, § 11.10(c), at 714.

Our review of whether counsel's conduct was objectively unreasonable is <u>de novo</u>, as the Pennsylvania courts never reached this issue, having denied the claim on strategy grounds. Here, counsel decided to withdraw his motion to suppress an identification by Fuller after Fuller failed to identify Thomas at the pre-trial hearing. At trial, when Fuller did in fact make an identification, counsel did not object to the identification or move to suppress it because he erroneously believed that he could not take either of those actions once the identification had been made. We need not decide whether the withdrawal of the original suppression motion itself constitutes objectively unreasonable behavior. Instead, we agree with the District Court that failure to move to suppress or otherwise object to an in-court identification

are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds. <u>Cf.</u> <u>McCoy</u>, 410 F.3d at 134 (discussing whether a hearing is necessary in the context of the federal custody habeas section, 28 U.S.C. § 2255).

by the prosecution's central witness, when there are compelling grounds to do so, is not objectively reasonable representation, absent some informed strategy.[11] See Morrison v. Kimmelman (Morrison), 752 F.2d 918, 922 (3d Cir. 1985) (suggesting that "proper norms of advocacy" required a "timely [motion] to suppress" where there was a valid basis for suppression), aff'd on other grounds 477 U.S. 365 (1986) (Kimmelman); Rodriguez, 906 F.2d at 1160 ("[W]e think it is obvious that in a case like this one–with no murder weapon in evidence and only one witness naming the defendant as the murderer–even the most withering cross examination could not substitute for suppression."); see also Cossel v. Miller, 229 F.3d 649, 654 (7th Cir. 2000). Of course, it would not be objectively unreasonable for counsel to decline to make a motion to suppress during a trial when either the motion is plainly without merit or the evidence is of little probative value. Here, however, that is not the case, as the motion was colorable, given Fuller's failure to make an identification at the pre-trial hearing and his testimony regarding the photo arrays and the lack of any evidence other than Young's testimony connecting Thomas to the shooting.

2.      *Prejudice*

The prejudice component requires Thomas to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. He "need not show that counsel's deficient performance 'more likely than not altered the outcome in the case'–rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs, 395 F.3d at 105 (citing Strickland, 466 U.S. at 693-94). "This standard

_____

[11]Although the Commonwealth suggests that motions to suppress made after presentation of evidence are rare, they are certainly permitted. See, e.g., Commonwealth v. Long, 753 A.2d 272, 279 (Pa. Super. Ct. 2000) ("[A] motion to suppress evidence must be made pretrial, unless the opportunity did not previously exist, or the interests of justice otherwise require.") (internal quotation omitted).

14

is not a stringent one." Id. (internal quotations omitted). Although Strickland does not set a high bar with respect to the prejudice inquiry, Thomas must show that he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted. See Morrison, 752 F.2d at 922; see also Belmontes v. Brown, 414 F.3d 1094, 1121 (9th Cir. 2005) (requiring a "reasonable probability that a motion to suppress would have succeeded and that the suppression . . . would have led to a different out-come at the trial") (citing Kimmelman, 477 U.S. at 375); Howard v. Bouchard, 405 F.3d 459, 481 (6th Cir. 2005) ("[Petitioner] cannot establish prejudice under Strickland, because he cannot show that a motion to exclude [the] identifications would have succeeded.").

The District Court found, however, that counsel was ineffective for failing to move to suppress or object to the identification, and then found prejudice, stating that "[f]ailure to object to an unreliable eyewitness identification is manifestly prejudicial where, as here, there was no physical evidence linking Petitioner to the crime and the only other eyewitness was also unreliable." App. at 11. That analysis skips a step, in assuming that the objection would have likely resulted in suppression of the identification. Indeed, were it likely that the suppression motion would have been denied (or the objection overruled), then Thomas could not show prejudice.[12] The Magistrate Judge, on the other hand, did consider the merits of the motion. As with objective reasonableness, we review prejudice de novo, as it is a legal issue never considered in the Pennsylvania court proceedings.

In order to determine whether a motion to suppress would have been granted, we must determine (1) whether the identification process was unduly suggestive and, if so, (2) whether the totality of the circumstances nonetheless renders the

---

[12]Relatedly, as it is the petitioner's burden to show prejudice, it is his responsibility to develop a record under which the merits of the suppression motion can be determined. Availability of a hearing for such purposes should be determined under the standards discussed in Part II.A.

15

identification reliable. See Neil v. Biggers, 409 U.S. 188 (1972). As to the first inquiry, "convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of . . . misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). The determination of whether the circumstances give rise to undue suggestiveness must be made on a case-by-case basis, considering the particular conduct in each case. Id. Here, we agree with the District Court and the Magistrate Judge that the detective's alleged insistence to Fuller to look "real good" at the photograph of Thomas after failing to get an identification from Fuller on several prior occasions constitutes undue suggestiveness. Although the Commonwealth notes that the detective refuted this allegation, Fuller's testimony clearly shows that he believed that the detective was urging him to make the photographic identification, and that he would not otherwise have made it.[13]

The Supreme Court has made clear, however, that undue suggestiveness alone does not require suppression; rather, this Court must consider "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Biggers, 409 U.S. at 199. In Biggers, the Supreme Court held that

> the factors to be considered in evaluating the likelihood of misidentification include [(1)] the opportunity of the witness to view the criminal at the time of the crime, [(2)] the witness' degree of attention, [(3)] the accuracy of the witness' prior description of the criminal, [(4)] the level of

---

[13]The Commonwealth asserts that the Magistrate Judge improperly placed the burden on the Commonwealth to establish the propriety of challenged evidence, thereby shifting the burden of showing prejudice away from Thomas. See Pa. R. Crim. P. 581(H). However, we find that Thomas offered enough evidence of undue suggestiveness to carry his burden on prejudice.

certainty demonstrated by the witness at the confrontation, and [(5)] the length of time between the crime and the confrontation.

Id. at 199-200. Here, both the District Court and the Magistrate Judge conducted an inquiry into these factors and concluded that there was a substantial likelihood of irreparable misidentification.[14] (App. 9-10, 38-45.) We agree. Under the first two factors, although Fuller did have an opportunity to see his assailant, he testified that he was facing the assailant only for a short time and was concentrating first on his chess game and then on attempting to flee. The third factor does weigh in favor of reliability, as Fuller's initial description of the shooter is an accurate description of Thomas. However, the fourth factor strongly negates any reliability evidenced by the third factor: Fuller expressly disavowed his identification at the pre-trial hearing, and his certainty at trial cannot be reconciled with his testimony and the earlier hearing. As to the last factor, a significant amount of time passed between the shooting and the in-court identification, with Fuller failing to identify an assailant in the intervening period, including during the time immediately after the incident. Considering each of the factors, we find that the identification was the product of unduly suggestive photographic lineups and was unreliable given the totality of the circumstances.

Assuming that the identification would likely have been suppressed we believe that there is a reasonable likelihood that the result of the trial would have been different. As noted, this is not a stringent standard. Once Fuller's identification is excluded, the only remaining evidence inculpating Thomas is the testimony of Young. That testimony was very questionable; indeed, the prosecution had to impeach him with his own prior statements at the outset of his testimony. He also stated his apprehension towards police officers and stated that he was threatened before identifying Thomas. Importantly, Thomas's co-defendant was acquitted by the jury notwithstanding Young's implication of him

---

[14]Although the Magistrate Judge relied on cases other than Biggers to derive the factors, he undertook the same analysis.

in the criminal activity. We conclude that counsel's error in failing to move to suppress or object to the identification at trial clearly undermined the reliability of the verdict.

## III.

For the foregoing reasons, we affirm the District Court's grant of Thomas's petition for habeas corpus.