NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2931
_____

UNITED STATES OF AMERICA

v.

STANLEY FOOTE,
                              Appellant.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-cr-631-2)
District Judge:  Hon. Stanley R. Chesler
_____

Submitted Under Third Circuit LAR 34.1(a)
June 22, 2011

Before:   CHAGARES, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: June 23, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

On February 20, 2009, a jury in the United States District Court for the District of

New Jersey found Stanley Foote guilty of conspiracy to commit robbery, attempt to

commit robbery, and the use, possession, and brandishing of a firearm in furtherance of a

crime of violence. Foote appeals his conviction, arguing that the District Court's denial of his motion to suppress pretrial identification evidence violated his due process rights because it created a substantial likelihood of misidentification. On that basis, Foote seeks a new trial. For the reasons that follow, we will affirm.

## I.    Background

On July 27, 2007, a grand jury returned a four-count indictment charging Foote and Waleak Chandler with, among other things, knowingly and willfully conspiring to obstruct, delay, and affect commerce by robbery, in violation of 18 U.S.C. § 1951(a), attempting to commit robbery, in violation of 18 U.S.C. §§ 1951(a) and (2), and the use and possession of a firearm in furtherance of those crimes, in violation 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2). Those charges arose from Foote's and Chandler's involvement in an August 23, 2006 home-invasion robbery at 241 Lincoln Avenue in Essex County, New Jersey.

Nearly two years after the home invasion, FBI agents subpoenaed Larry Cooper,[1] who said that, on the evening of the crime, he was outside of the residence across the street from 241 Lincoln Avenue. Cooper claimed that he had noticed a vehicle driven by two black males slowly circle the block a couple of times and then park. Later, while going to his own vehicle, which was parked directly across the street from 241 Lincoln Avenue, Cooper came within ten feet of two men who, it was implied, were the same

---

[1] The caption on the subpoena read: "United States v. Waleak Chandler," and in no way indicated Foote's involvement in the case.

ones whom he had earlier seen circling the block. After Cooper provided a description of them, he was told that he would be shown "a series of photographs of individuals that all resembled each other" but that he "was free to not choose anybody." (App. at 64.) The photo array contained six photos, with Foote's photo situated in the middle of the top row of three photographs. Each of the men in the array was the same race, approximate age, build, and hair style as all others in the array. The amount and style of facial hair varied slightly among the individuals in the photographs. Cooper identified Foote within five to seven seconds, circled Foote's photograph, and signed the array with the date and time, indicating that he was "positive" regarding his identification. (App. at 66-67.)

Prior to trial, Foote requested and was granted a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), in order to challenge Cooper's pretrial identification as the product of an overly suggestive photo array. At the *Wade* hearing, the defense attacked the identification because FBI Agent Kevin Conklin testified that he could not recall whether, during the interview, Cooper was asked if he had been under the influence of drugs or alcohol on the night of the attempted robbery. Moreover, the evidence showed that Cooper's initial description of the man indicated a lack of facial hair, while Foote had facial hair in the photo used in the array. Cooper also had described the man to be approximately six foot three inches tall, though Foote is five foot eleven inches tall.

The District Court rejected the attacks on the pretrial identification and held that the photo array was "not suggestive in any way, shape or form." (App. at 94.) The Court found that there were multiple individuals in the array with similar facial hair and that all

had similar haircuts and facial structures – aside from the man in the upper right hand corner, who had a "somewhat chubbier face." (App. at 94.)  The Court further concluded that the agent's testimony was credible and that the photo array was not presented in a suggestive manner.

The case proceeded to trial and, as noted earlier, a jury found Foote guilty on three counts.[2]  The total term of imprisonment included in the sentence was 324 months.  Foote timely appealed.

## II.    Discussion[3]

We review the District Court's decision to admit or exclude evidence "for abuse of discretion, applying clear error review to its underlying factual findings and plenary review to its conclusions drawn from such facts."  *United States v. Mathis*, 264 F.3d 321, 331 (3d Cir. 2001).

Recognizing that the use of photographs to identify criminals may risk misidentification, the Supreme Court has held that a pretrial identification must be set aside when the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*,

---

[2] Specifically, Foote was found guilty of knowingly and willfully conspiring to obstruct, delay, and affect commerce by robbery, 18 U.S.C. § 1951(a), an attempt to do the same, 18 U.S.C. §§ 1951(a) and (2), and the use, possession, and brandishing of a firearm in furtherance of the above crimes, 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2).  Foote was acquitted of a fourth count, the use and carrying of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2).

[3] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction under 28 U.S.C. § 1291.

390 U.S. 377, 384 (1968). We have likewise held that "[a] due process violation can result when an identification procedure is so suggestive that it undermines the reliability of the resulting identification. Allowing a jury to consider an identification that is tainted by such a procedure can constitute reversible error entitling the defendant to a new trial." *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003).

We employ a two-step approach in determining whether to suppress an in-court identification that follows an allegedly unduly suggestive out-of-court identification. *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991). First, we ask whether the photo identification procedure was "unnecessarily or impermissibly suggestive." *Id.* (internal quotation marks omitted.) To answer that, we determine the actual suggestiveness of the identification and whether there was a good reason for the failure to utilize less suggestive procedures. *Id.* If the photo array is unnecessarily suggestive, we then determine under the totality of the circumstances whether it was so much so that it gave rise to a substantial likelihood of misidentification amounting to a violation of due process. *Id.* "[R]eliability is the linchpin in determining the admissibility of identification testimony… ." *Id.* at 1391 (internal quotation marks omitted). The criteria to be considered include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

5

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). In sum, "we must determine (1) whether the identification process was unduly suggestive and, if so, (2) whether the totality of the circumstances nonetheless renders the identification reliable." *Thomas v. Varner,* 428 F.3d 491, 503 (3d Cir. 2005). The defendant has the burden of proving that the out-of-court identification was the product of unduly suggestive procedures. *Lawrence,* 349 F.3d at 115.

Here, Foote has failed to carry that burden of proof at the first step. He argues that the placement of his photo in the center of the top row of the array made it "prominent." (Appellant's Opening Brief at 13.) However, depending on one's perspective, several positions in the photo array, including the first or last, could be described as "prominent." *See Lawrence*, 349 F.3d at 115 ("If his was the first photo shown, a defendant might argue that showing his/her photo first was unfair. Similarly, a defendant could argue that it is unfair to show his/her photo last, after a witness has been unable to identify anyone else.") We are not persuaded that the placement of Foote's photo made it so prominent as to be unduly suggestive.

Foote also argues that the photo array was unduly suggestive because the other persons pictured had either more or less facial hair than he did. However, those differences in facial hair are negligible and certainly not so striking as to render the array unduly suggestive. The District Court, then, did not err in concluding that the photo array was "not suggestive in any way, shape or form" (App. at 94), and thus did not abuse its

6

discretion in admitting the photo array into evidence.[4]  Because there was no error, Foote is not entitled to relief.

## III.    Conclusion

For the forgoing reasons, we will affirm.

---

[4] Because we conclude that Foote has failed to demonstrate the photo array was unduly suggestive, and thus failed at the first step of our inquiry, the remainder of his arguments, which relate to the *Neil v. Biggers* factors and the totality of the circumstances, need not be reached.  *See Varner,* 428 F.3d at 503.