**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2343
_____

UNITED STATES OF AMERICA

v.

ANTHONY DWAYNE BAXTER,
                                        Appellant


_____

No. 15-2477
_____

UNITED STATES OF AMERICA

v.

ANTHONY DWAYNE BAXTER,
                a/k/a Tony Allen Baxter
                a/k/a Anthony B. Allen
                a/k/a Anthony E. Baxter

                Anthony D. Baxter,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Nos. 2-11-cr-00681-001 & 2-11-cr-00733-001)
District Judge:  Honorable Timothy J. Savage
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 27, 2016
_____

Before:  FISHER,[*] VANASKIE and KRAUSE, *Circuit Judges*

(Filed: March 29, 2017)

_____

OPINION[**]

_____

VANASKIE, *Circuit Judge.*

Anthony Dwayne Baxter appeals denial of his motion filed under 28 U.S.C. § 2255 challenging his 71-month prison term imposed following his plea of guilty to charges of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, loan fraud in violation of 18 U.S.C. § 1014, bankruptcy fraud in violation of 18 U.S.C. §§ 152(1) and 152(3), passport fraud in violation of 18 U.S.C. § 1542, and misuse of a social security number in violation of 42 U.S.C. § 408(a)(7)(B).  We granted a certificate of appealability on a single issue: whether Baxter's sentencing counsel was ineffective for arguing that an internet company's valuation of real estate should be used for purposes of making the "loss" calculation on one of the fraud charges under U.S.S.G. § 2B1.1.  We conclude that under the circumstances presented here, counsel's use of the valuation did not constitute ineffective assistance.  Accordingly, we will affirm the District Court's denial of the § 2255 motion.

**I.**

_____

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

In 2011, two separate indictments were returned against Baxter, charging him with multiple counts of fraud. On May 17, 2012, Baxter pleaded guilty without a plea agreement to all charges in both indictments. The indictments were consolidated for purposes of sentencing, which occurred on January 3, 2013.

In accordance with U.S.S.G. § 3D1.2, the counts from both indictments were grouped together to determine the applicable advisory range of punishment. Critical to the ascertainment of Baxter's advisory sentencing guideline range was the aggregate amount of loss sustained as a result of his frauds. Pertinent to the matter before us is the calculation of loss on one of Baxter's fraud charges arising from a mortgage Baxter procured for a residential property in Williamstown, New Jersey.

The Application Notes to the applicable section of the United States Sentencing Guidelines Manual – § 2B1.1 – essentially prescribe that the loss attributable to the Williamstown fraud be measured by the difference between the amount paid by the lender and the fair market value of the property at the time that the defendant's guilt was established. *See* U.S.S.G. § 2B1.1, cmt. n.3(E)(iii) (2012).[1]

---

[1] Application Note 3(E)(iii) to U.S.S.G. § 2B1.1., in pertinent part, provides:

[I]n the case of a fraud involving a mortgage loan, if the collateral has not been disposed of by the time of sentencing, use the fair market value of the collateral as of the date on which the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

In such a case, there shall be a rebuttable presumption that the most recent tax assessment value of the collateral is a reasonable estimate of the fair market value. In determining whether the most recent tax assessment value is a reasonable estimate of the fair market value, the court may consider, among other factors, the recency of the tax assessment and the extent to

3

The parties each submitted sentencing memoranda suggesting different fair market values for the property. The Government calculated the loss relating to the Williamstown property by subtracting a $341,000 estimate of the property's fair market value provided by Bank of America[2] from the $398,153 payment the mortgage lender provided for the purchase of the property. The Bank of America valuation netted a loss of $57,153. Baxter's sentencing memorandum proposed a slightly higher fair market valuation of $344,100 reflecting an estimate provided by the website Zillow.[3] The Government agreed to use the Zillow valuation, and the District Court appears to have utilized it in calculating the aggregate loss.[4] The Zillow valuation resulted in a loss of $54,053 attributable to the mortgage fraud. When combined with the losses from Baxter's other fraudulent conduct, the aggregate loss for sentencing purposes totaled $137,260. At no time during the sentencing did either side suggest using the most recent tax assessment value ("TAV") of the property for the purposes of calculating the loss related to the Williamstown property.

At sentencing, the District Court determined the aggregate loss to exceed $120,000, but not $200,000. Under the Guidelines, Baxter's total offense level was 18,

---

which the jurisdiction's tax assessment practices reflect factors not relevant to fair market value.

[2] Bank of America was the mortgage lender for the loan.

[3] Zillow's "Zestimate" home valuation tool uses a proprietary formula to estimate the value of a particular property. The Zestimate utilizes public and user-submitted data, including special features of the property, location, and market conditions.

[4] The District Court did not make an explicit finding in this regard.

4

which included a 10-level enhancement corresponding to the aggregate loss from all of his frauds under U.S.S.G. § 2B1.1(b)(1)(F).  Combined with Baxter's criminal history category of VI, this offense level yielded a suggested imprisonment range of 57 to 71 months.  The Government moved for an additional upward variance, which was denied. The District Court sentenced Baxter to an aggregate 71 months' incarceration and three years of supervised release.

Rather than initiating a direct appeal, Baxter filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence.  Baxter raised two broad issues in his motion.  First, Baxter alleged that his counsel was ineffective for failing to directly appeal his sentence after Baxter instructed him to do so.  Second, Baxter alleged that his counsel was ineffective in connection with the District Court's calculation of the aggregate loss associated with his fraud charges.  Relevant to this appeal, Baxter argued that counsel should have argued that the District Court use the 2012 or 2013 TAV of the Williamstown property for the purposes of calculating the loss to the mortgage lender. Because the TAVs assigned a higher property value than the Zillow valuation, their use would have reduced the aggregate loss attributable to the frauds to more than $70,000, but not more than $120,000.  The resultant impact on Baxter's advisory imprisonment range would have been to lower it to 46 to 57 months.

The District Court conducted an evidentiary hearing on Baxter's § 2255 motion. Both Baxter and his sentencing counsel testified at the hearing.  In an opinion dated March 24, 2015, the District Court rejected Baxter's claim that sentencing counsel was

ineffective for not advocating that the 2012 or 2013 TAV be used to determine the Williamstown property's fair market value.

Baxter appealed, requesting a certificate of appealability. We granted his request on the issue of whether Baxter's sentencing counsel was ineffective for arguing that the Zillow valuation should be used in calculating the loss associated with Baxter's loan fraud charge instead of advocating that the District Court use the TAV of the property from 2012 or 2013.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). "In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings." *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citing *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997)).

## III.

To prevail on his ineffective assistance of counsel claim, Baxter "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In evaluating counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). Baxter "must overcome the 'presumption that, under the

6

circumstances, the challenged action might be considered sound . . . strategy.'" *Id.* (quoting *Strickland*, 466 U.S. at 689 (internal quotation marks omitted)). This presumption can be refuted by demonstrating that "(1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).

Baxter asserts that counsel incorrectly suggested that the District Court utilize the Zillow valuation as the fair market value of the Williamstown property, and instead should have insisted that the District Court use the property's 2012 or 2013 TAV. The value assigned to the property underlying Baxter's loan fraud is significant because § 2B1.1 of the Guidelines specifies that a defendant's "offense level is to be increased based on the loss amount for offenses involving fraud." *United States v. Diallo*, 710 F.3d 147, 150 (3d Cir. 2013). Where, as here, the fraud involves a mortgage loan and the underlying property has not been sold, the loss amount is calculated by subtracting the fair market value of the property "as of the date on which the guilt of the defendant has been established" from the outstanding loan balance. U.S.S.G. § 2B1.1(b) cmt. n.3E(iii) (2012).[5] The Guidelines specify "a rebuttable presumption that the most recent tax assessment value of the collateral is a reasonable estimate of the fair market value." *Id.* To gauge whether a TAV is a reasonable estimate of value, a court "may consider, among

---

[5] "[S]entencing courts must apply the guidelines in effect at the time of sentencing." *United States v. Wood*, 486 F.3d 781, 790 (3d Cir. 2007) (quoting *United States v Kopp*, 951 F.2d 521, 526 (3d Cir. 1991)).

7

other factors, the recency of the tax assessment and the extent to which the jurisdiction's tax assessment practices reflect factors not relevant to fair market value." *Id.*

When Baxter pleaded guilty to the mortgage fraud charge, the 2012 TAV of $444,500 was the most recent assessment. Because the 2012 TAV exceeds the $398,153 mortgage loan, Baxter argues that there was no net loss associated with the property. If the loan fraud resulted in no loss, the aggregate loss attributable to Baxter's frauds would be $83,207—a reduction that would have called for an 8-point enhancement under the Guidelines instead of the 10-point enhancement Baxter received. *See id.*

Alternatively, Baxter argues that if the Government attempted to rebut the presumption that the 2012 TAV was a reasonable estimate of the fair market value, counsel should have proffered the 2013 TAV of $381,700 as a more accurate reflection of the property's fair market value. The 2013 TAV was effective October 1, 2012—only three months prior to Baxter's January 3, 2013 sentencing. Using the $381,700 TAV would result in a loss of $16,453 related to the property and an aggregate loss of $99,660 for sentencing purposes. The 2013 TAV would also lead to an 8-point enhancement instead of the 10-point enhancement Baxter received.

The question we face is whether the District Court erred in concluding that counsel was not ineffective for suggesting the Zillow valuation and failing to bring the TAVs to the District Court's attention at sentencing. The District Court concluded that the record evidences a "reasonable and professional" strategy by counsel to provide the Zillow valuation to the District Court, and we agree. (App. at 11.) While counsel admitted that he "take[s] Zillow values with a grain of salt," and that he did not

8

investigate the accuracy of the Zillow valuations, counsel explained that it was "certainly a concern" that if the property were properly appraised, it would appraise for significantly less than the Zillow valuation. (Supp. App. at 66, 68.) When asked if, from his perspective, the Government's use of the Zillow valuation was a "bit of a windfall for the defense," counsel replied that he "thought it was a favorable position that was not going to require a tremendous amount of litigation to get to." (*Id.* at 68.)

Counsel's testimony makes clear that he feared an appraisal of the property could lead to an even lower value than the Government had initially proposed using. The 2012 TAV was outdated as it was based upon an estimate of the property's value made in 2008. Furthermore, as the District Court observed, "[t]he property was vacant, unkempt and subject to a foreclosure sale, all factors affecting its fair market value." (App. at 11.) If counsel had suggested that the District Court consider the 2012 or 2013 TAVs as the value of the property, it is certainly plausible that the Government would have objected and an appraisal would have been sought. It is also plausible that an appraisal would have resulted in a lower valuation than the Zillow estimate. The Government represents that TAVs "are based on factors such as lot size and the number of rooms in a house," and "fail completely to account for the actual condition of the property." (Appellee Br. at 29.) Given this concern, counsel's strategy was reasonable.

Baxter did not offer any evidence to suggest that counsel was not actually motivated by this strategy or that his actions could never be a part of a sound strategy. Instead, Baxter argues that Zillow valuations are frowned upon by courts across the country and are inherently unreliable. But Baxter ignores that the Zillow valuation was

9

used by his counsel to secure a more favorable calculation of the loss associated with his loan fraud. Despite Baxter's argument to the contrary, counsel was not deficient for using a potentially unreliable Zillow valuation to secure Baxter a more favorable loss calculation than what the Government had proposed. The Zillow valuation was used to Baxter's benefit while at the same time avoiding counsel's fear of a much lower appraisal. Counsel's representation was not ineffective because his performance was based upon a strategic decision rooted in common sense.

## IV.

For the foregoing reasons, we will affirm the District Court's denial of Baxter's § 2255 motion.