NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1062
_____

TERRANCE FOWLER,
                                            Appellant

v.

SUPERINTENDENT SMITHFIELD SCI;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
DISTRICT ATTORNEY OF ERIE COUNTY
_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 1-14-cv-00151
District Judge: The Honorable Terrence F. McVerry

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 13, 2017

Before: SMITH, <u>Chief Judge</u>, NYGAARD, and FUENTES, <u>Circuit Judges</u>

(Filed:  July 17, 2017)
_____

OPINION[*]
_____

_____

[*]This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, <u>Chief Judge.</u>

Terrance Fowler appeals a District Court order denying a petition for a writ of habeas corpus. Fowler claims that he received ineffective assistance of counsel because trial counsel failed to move to suppress an improper identification by the prosecution's primary witness. The District Court denied Fowler's petition because Fowler could not show that he was prejudiced. For the following reasons, we will affirm the District Court's judgment.

I.

In July 2011, following a two-day jury trial in the Court of Common Pleas of Erie County, Pennsylvania, Fowler was convicted of various crimes associated with the robbery of a jewelry store and was sentenced to a term of 27½ to 55 years of imprisonment.[1] At trial, the prosecution's first witness was the jewelry store owner, Aleksandr Cheremnykh. Cheremnykh testified that on July 7, 2010, two African American men entered his store wearing ski masks, baseball caps, and sunglasses. One man pointed a gun at Cheremnykh and ordered him to open his safe. When Cheremnykh refused, the man shot him in the chest. The two men seized several silver certificates and keys to display shelves before fleeing the scene. Because the men wore masks, Cheremnykh was not able to identify them.

---

[1] The jury found Fowler guilty of attempted homicide, aggravated assault, conspiracy to commit robbery, and possession of instruments of crime.

The primary evidence tying Fowler to the crime was provided by Bruce Wagner, who lived around the corner from the jewelry store. Wagner testified that he saw two African American men park a small green car outside his house on the morning of July 7, 2010. He observed the men walk away from the car, one wearing a black t-shirt and the other wearing a white t-shirt. After about ten minutes, the men returned to the car and drove away. About five minutes later, they returned to the same spot outside Wagner's house, parked, and walked away again. Becoming suspicious, Wagner wrote down the car's license plate number. Another ten minutes later, Wagner saw the two men run back to the car and drive off. Wagner turned on his police scanner, heard about the nearby jewelry store robbery, and went outside to flag down a passing police officer. The officer, Officer Velez, inspected the area where the green car had been parked and found a silver certificate.

Officer Don Sorberger testified that the police traced the license plate number Wagner reported and discovered that the car belonged to Fowler. When police arrived at Fowler's house, they found a small green car matching Wagner's description parked in the driveway. The car's license plate number was identical to the number Wagner had reported. Fowler admitted to the police that he had been in control of the car all day. When police searched the car, they found a white t-shirt.

Despite providing the information leading to Fowler's arrest, Wagner did not identify Fowler as one of the men who parked outside his house until Fowler's preliminary hearing. By the time he testified at that hearing, Wagner had already seen news footage of Fowler's arrest, and he knew that Fowler was one of the individuals charged.[2] When Wagner identified Fowler during the trial, Fowler's attorney did not move to suppress the in-court identification.

After Fowler was convicted and sentenced, he filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §§ 9541–46, which was denied in June 2013. He appealed to the Superior Court of Pennsylvania, which affirmed the decision denying PCRA relief. *Commonwealth v. Fowler*, No. 1330 WDA 2013, 2015 WL 10979824 (Pa. Super. Ct. Mar. 3, 2015). Fowler then filed a petition for writ of habeas corpus in the U.S. District Court for the Western District of Pennsylvania, where he raised four claims. The Magistrate Judge filed a report and recommendation on November 2, 2015, recommending that the petition be denied, and the District Court adopted the report and recommendation on December 18, 2015.

---

[2] At the preliminary hearing, Wagner also misidentified Fowler's accomplice and testified that he was "as certain of his identification of Fowler as he was of his identification of Fowler's accomplice." *Fowler*, 2014 WL 109798242013 at *6.

This Court granted a certificate of appealability as to Fowler's claim that he was denied effective assistance of counsel when counsel failed to file a motion to suppress Wagner's in-court identification.[3]

## II.

We exercise plenary review over the District Court's Order denying a writ of habeas corpus. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010). Our review is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). Under AEDPA, if a state court has adjudicated the merits of a habeas claim, a reviewing court must deny the petition for a writ of habeas corpus unless the state's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is contrary to clearly established federal law if it "'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different' from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court's decision unreasonably applies clearly established federal law if "no fairminded

---

[3] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 2254. We have

jurist" could agree with the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. "If this standard is difficult to meet, that is because it was meant to be. . . . Section 2254(d) reflects the view that habeas corpus is a 'guard against the extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens J., concurring in the judgment)).

The Supreme Court set forth the rule governing Fowler's ineffective assistance claim in *Strickland v. Washington*. *See* 466 U.S. 668 (1984). There, the Court recognized that "the right to counsel is the right to the effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Counsel's assistance is constitutionally ineffective only when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

In *Strickland*, the Supreme Court created a two-part test for ineffective assistance claims. First, the defendant must show that counsel's errors were so egregious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. This is done by demonstrating that counsel's decisions

---

jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253.

were not reasonable "under prevailing professional norms." *Id.* at 688. Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A trial's result is unreliable when a defendant can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Superior Court applied *Strickland* and rejected Fowler's claim of ineffective assistance of counsel, concluding that he could not show that he was prejudiced by counsel's failure to file a motion to suppress Wagner's in-court identification. *See Fowler*, 2014 WL 10979824, at \*4-6. Because the Superior Court applied the correct test and did not confront a set of facts materially indistinguishable from those of a Supreme Court case, the question here is whether the Superior Court's analysis was an unreasonable application of *Strickland*. "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. . . . For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter,* 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). Therefore, we do not consider whether counsel's failure to move to suppress the impermissible identification prejudiced Fowler, but whether a

7

fairminded jurist could agree with the Superior Court's conclusion that Fowler was not prejudiced by his counsel's error.

III.

The Superior Court concluded that Wagner's identification of Fowler was an "impermissible suggestive identification"[4] and that the trial court had failed to properly assess whether Fowler had an independent basis for identifying Fowler as the perpetrator. *Fowler*, 2014 WL 10979824, at \*5-6 (citing *Commonwealth v. Carter*, 643 A.2d 61, 71 (Pa. 1994)). Nonetheless, the Superior Court rejected Fowler's claim of ineffective assistance, concluding that Fowler failed to show that he suffered prejudice as a result of counsel's failure to move to suppress the identification.

Specifically, the Superior Court observed that, even if Wagner's identification of Fowler as one of the perpetrators had been excluded, there

---

[4] Under Pennsylvania law, "identifications made only after a witness has seen the defendant in the media" are "impermissible suggestive identification[s]." *Carter*, 643 A.2d at 71. Applying *Carter*, the Superior Court held that Wagner's identification of Fowler was impermissible because

> Wagner identified Fowler for the first time at his preliminary hearing. Between the time of the robbery and the initial identification, Wagner watched a news program that depicted Fowler, in handcuffs, being arrested for the crimes at issue. The record further reflects that . . . on at least one occasion, Wagner saw Fowler at the Magistrate's office and knew he was one of the individuals charged. Thus, as in *Carter*, Wagner's subsequent identification of Fowler was an "impermissible suggestive identification.

8

remained significant evidence tying Fowler to the robbery. Wagner testified about a small green car that was parked only blocks away from the jewelry store at the time of the robbery, and the license plate number of that car was later found to match Fowler's. Moreover, Fowler himself admitted that he had been the sole person in control of his car on that day. In the face of this evidence, the Superior Court held that "there is no basis for concluding that there is a reasonable probability that the outcome would have been different if counsel had filed a motion to suppress the identification." *Id.* at *6. When the District Court reviewed the Superior Court's decision, it concluded that, confronted with all the evidence against Fowler, the Superior Court's decision was not an "unreasonable application of" *Strickland*.

On appeal, Fowler simply reargues *Strickland*. He stresses that Wagner's identification of Fowler was not reliable and contends that, had the identification been excluded, "there is a reasonable likelihood that Fowler's trial would have had a different outcome." Brief for Appellant at 24, 27. This argument misses the mark. Under AEDPA, our task is not to consider whether the Superior Court was correct in holding that Fowler could not show prejudice. Rather, affording "deference and latitude" to the Superior Court, we must determine whether a fairminded jurist could agree with that holding. *See Harrington,* 562 U.S. at 101.

---

*Fowler*, 2014 WL 10979824, at *5 (citations omitted).

Fowler primarily relies upon our decision in *Thomas v. Varner* in support of his claim. *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005). In *Thomas*, we affirmed the District Court's grant of Thomas's habeas petition on the ground that counsel rendered ineffective assistance when he failed to object to or move to suppress an improper in-court witness identification made by Peter Fuller. *Id*. at 504.

We held that Thomas suffered prejudice from counsel's failure to move to suppress Fuller's identification because, if the improper identification had been excluded, the sole remaining evidence inculpating Thomas was the "very questionable" testimony of a second witness, Christopher Young. *Id.* Young only identified Thomas after "making several inconsistent statements about the incident," and later testifying that he feared being arrested himself if he did not name someone. *Id.* at 495. In addition, Young had implicated Thomas's co-defendant, and the jury had acquitted the co-defendant notwithstanding Young's testimony. *Id.* at 504. Given this "very questionable" evidence, we concluded that there was "a reasonable likelihood that the result of [Thomas's] trial would have been different" if the identification had been excluded. *Id*.

Fowler posits that his situation is identical to *Thomas*. We do not agree for two important reasons. First, in *Thomas*, the Pennsylvania state courts had never considered the issue of whether Thomas had suffered prejudice as a result of the failure to suppress the identification. *Id*. at 501. Accordingly, Thomas was required

to demonstrate only "a probability [of prejudice] sufficient to undermine the outcome." *Id.* at 502. That standard was "not a stringent one." *Id.* Here, in contrast, the Pennsylvania Superior Court considered and rejected Fowler's claim that he suffered prejudice. Accordingly, Fowler's claim is subject to an entirely different, more stringent, standard of review. Under AEDPA, we must afford great deference to the Superior Court, and we therefore may consider only whether a fairminded jurist could agree with its decision. *See Harrington,* 562 U.S. at 101.

Second, we cannot agree with Fowler's implication that Wagner's testimony apart from the identification is comparable to the "very questionable" testimony presented by Young in *Thomas*. Fowler argues that, absent the identification, "the jury would have been left with Wagner's testimony of two non-descript African American men parked in a car on his street." Brief for Appellant at 29. Yet Wagner testified to much more than that. Wagner observed a small green car parked only blocks away from the jewelry store at the time of the robbery, bearing a license plate number that was later found to match Fowler's. Fowler thus suggests that we should discredit Wagner's testimony linking his car—and, by Fowler's admission to the police that he had been in control of his car all that day, Fowler himself—to the scene of the crime.

AEDPA instructs that a state court's findings of fact, including its assessment of witness credibility, are presumed to be correct absent clear and

convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). The Superior Court treated Wagner's testimony concerning Fowler's car as reliable, and Fowler has not presented clear and convincing evidence showing that the Superior Court was wrong to do so. Given the evidence supporting Fowler's conviction apart from the impermissible identification, we cannot conclude that the Superior Court reached a decision with which no fairminded jurist could agree.

## IV.

Because Fowler presents no other arguments addressing AEDPA's standard, we will affirm the Order of the District Court denying Fowler's habeas petition.